**NAACP, Jefferson County Branch, Fred Moody, and Lucius Donaldson, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**The Honorable Raymond J. DONOVAN, Secretary, United States Department of Labor, in His Official Capacity, and the United States Department of Labor, Defendants.**

Civ. A. No. 82–2315.

United States District Court, District of Columbia.

Sept. 3, 1982.

---

See also, D.C., 554 F.Supp. 715.

Philip A. Lacovara, Gerald Goldman and Thomas D. Goldberg of Hughes, Hubbard & Reed, Washington, D.C., for plaintiffs.

Stanley S. Harris, U.S. Atty., Royce C. Lamberth and Richard A. Stanley, Asst. U.S. Attys., William H. Duross, III, Associate Sol. for Employment and Training, U.S. Dept. of Labor, and Bruce W. Alter, U.S. Dept. of Labor, Washington, D.C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

## I

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment for declaratory and injunctive relief. By agreement of the parties this decision shall be the equivalent of a decision on the merits. The parties have agreed to a joint statement of material facts that are not in dispute and the only question now before the Court is one of law.

The basic question presented is whether the Department of Labor ("DOL") has properly enforced its regulations conditioning "certification" upon agreement by employers to pay workers at an established wage rate. Specifically, plaintiffs allege that DOL has improperly allowed employers to escalate the rate of productivity they demand of workers, rather than requiring employers to increase the piece rate[1] paid to workers, whenever the adverse effect rate ("AER")[2] is increased. The Court

---

1. Agricultural employers such as the apple growers in this case often pay workers by the piece (e.g. by the bushel) rather than by the hour. Thus, workers generally look to the piece rate in assessing the attractiveness of job opportunities.

2. The AER is the minimum wage rate that

finds that the DOL has not properly enforced its regulations, and, therefore, grants plaintiff's motion for summary judgment for the reasons set forth herein.

## II

## BACKGROUND AND FACTS

This is a class action filed by the NAACP on behalf of itself, several named plaintiffs and "all farmworkers who were employed by Ewer Orchards, Mount Level Orchards, [and] Tri-County Growers . . . at any time during the 1980 and 1981 harvest seasons; and all United States farmworkers who intend to seek or are seeking employment in West Virginia for the 1982 harvest season and whose wages or working conditions may be adversely affected by the acts complained of" as per this Court's Order of August 24, 1982 granting certification of the class.

Defendant, the DOL, is the government agency responsible for regulation of the wages and working conditions of plaintiff class members. Part of the DOL's responsibility entails advising the Attorney General regarding the admission of temporary foreign workers into this country. *See Immigration and Nationality Act* ("INA"), 8 C.F.R. § 214.2(h)(3)(i). The DOL is required to carry out the policy of the INA that alien workers may not be imported unless it is determined that their employment will not adversely affect similarly employed United States workers. *See id.* Pursuant to this mandate, the DOL has promulgated the regulations at issue here: 20 C.F.R. §§ 655.0 to 655.00, 655.200 to 655.-212. Under these regulations, employers

may import foreign workers only after they have obtained "temporary labor certification" from the DOL. The DOL may only grant certification upon a determination that admission of foreign workers will not adversely affect the wages or working conditions of American workers, and, that there are no sufficient American workers to meet the employer's needs. To aid in making these determinations, the DOL promulgated regulations pursuant to which it annually calculates the AER.[3] 20 C.F.R. § 655.207(d). Growers seeking certification must submit applications to the DOL stating the wages (which must be at least equal to the AER), terms, benefits and conditions that they will pay alien workers. After appropriate attempts to recruit sufficient American workers have failed, the DOL will grant certification.

The plaintiffs root their challenge of DOL's certification regulations in the applications of three West Virginia employers—Ewer Orchards, Mount Level Orchards, and Tri-County Growers, Inc.[4] (hereinafter the "growers") who have applied for certification at least since 1977. Prior to 1978 the growers' applications expressed piece rates and expected productivity rates solely in terms of bushels harvested. Presumably based on prior experience they represented that expected productivity for an average picker was 80 bushels per day. The piece rate was then established based on expected productivity of 10 bushels per hour for an eight hour day. Thus, the piece rate was equal to one-tenth of the AER rounded off to the highest cent. During 1977 and 1978 the piece rate was consistently set at a level that allowed workers that averaged 10 bushels an hour to earn the AER. Plain-

employers may pay to both foreign and domestic workers. The purpose of the AER is to ensure that rates paid to aliens do not depress the wages of similarly situated American workers. Thus, the regulations provide that the AER may not be less than "the prevailing wage rate in the area" of employment. 20 C.F.R. §§ 655.200(b), 655.207(a).

Pursuant to its regulations, the DOL has promulgated an AER yearly. However, the DOL failed to establish an AER for 1982. 20 C.F.R. § 655.200(b). *See* n. 6 *infra*.

3. The AER is not to be confused with the minimum wage computed under the Fair Labor Standards Act ("FLSA"). The minimum wage is the rate below which it is determined that American workers may not be paid. It is, in effect, the basic subsistence wage rate. The regulations provide that the AER must not be lower than the FLSA minimum wage. 20 C.F.R. § 655.207(e).

4. Prior to 1981 Tri-County Growers Inc. was known as "Tri-County Labor Camp." This difference has no bearing on this case.

tiffs do not contest the piece rate calculations for those years.[5]

In 1979, however, the growers submitted applications basing their piece rates upon an expected productivity rate of 80 *boxes* or 90 bushels per day. The DOL refused to accept these applications until the growers amended them to guarantee workers a piece rate that allowed workers to earn the AER, based on expected productivity of 80 bushels per day. The growers then amended their applications accordingly.

In 1980 and 1981, the growers again submitted applications proposing to pay piece rates based on the productivity rate of 80 boxes per day. In both of these years the applications were accepted and workers were paid at the proposed rates of 80 boxes per day. Thus, the workers were able to earn less than if the 80 bushel rate had been maintained.

The growers' applications for 1982 present a unique problem because the DOL has not yet established an AER for this year.[6] The growers' applications set the proposed piece rate for 1982 at one cent *below* last year's piece rates both per bushel and per box. The DOL had given preliminary approval to these applications and had allowed the growers to begin recruiting American workers at the proposed rates prior to this litigation. Had that effort been unsuccessful they then would have been allowed to begin recruiting American farm workers.

With the approach of the 1982 harvest season the plaintiffs filed this suit on August 17, 1982 seeking declaratory and injunctive relief. They seek to prevent the DOL from: (1) granting certification to the growers based on the piece rates proposed in their applications; and, (2) permitting the growers to recruit at the proposed rates.

5. In 1978 the growers added an additional calculation to their applications—they stated piece rates in terms of both bushels and boxes. One box is equal to one and one-eighth bushel. The importance of this addition did not become apparent until the growers submitted their 1979 applications.

6. Plaintiffs in a related case before this Court, *Bragg v. Donovan* No. 82–2361, sought to compel the DOL to establish an AER for 1982.

On August 20, 1982, the Court heard and granted plaintiff's motion for a Temporary Restraining Order. The Court ordered the DOL to rescind the certification that it had granted to one of the growers on August 18th. It further ordered the DOL to deny certification to the growers unless they agreed to establish an escrow fund containing wages that would be due to workers if the disposition of this case is favorable to plaintiffs. The growers will also be required to disclose the pendency of this suit and the existence of the escrow account in any of their recruiting materials. At the hearing on August 20th, the parties agreed that the hearing on the question of declaratory and injunctive relief would be combined with a hearing on the merits so as to allow the Court to expeditiously dispose of the entire matter. The parties further agreed that the matter would be determined on cross motions for summary judgment.

### III

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED BECAUSE DEFENDANT HAS FAILED TO COMPLY WITH ITS OWN REGULATIONS RELATING TO LABOR CERTIFICATION BY NOT REQUIRING THE GROWERS TO ADJUST PIECE RATES TO MATCH INCREASES IN THE AER

■ Two-sections of the regulations are important here. The first of these states: "[i]f the workers will be paid on a piece rate basis, the piece rate will be designed to produce average hourly earnings at least equal to the AER." 20 C.F.R. § 655.-

Pursuant to a consent order signed by all parties on August 26, 1982, the DOL agreed to promptly begin rulemaking proceedings to establish an AER before the end of the year... In the interim, the 1981 rate will be in effect. The consent order also provides that the growers must place cash or surety in escrow until a new calculation of the AER is promulgated to insure that the workers will receive the pay due to them.

202(b)(9)(ii). This section further provides that "[i]f the piece rate does not result at the end of the pay period in average hourly earnings . . . at least equal to . . . the AER, the worker's pay will be supplemented at that time so that the worker's earning are at least as much as the worker would have earned . . . if the worker had been paid at the AER." *Id.*

This section is important for several reasons. Initially, the section makes it clear that the AER is the absolute *minimum* that workers must be paid.[7] Additionally, by mandating that *average* hourly earnings must be at least equal the AER, the regulation establishes that above average workers should earn more than the established minimum. Finally, this section clearly requires the piece rate to be tied to the AER—the AER is used to calculate the minimum piece rate that may be offered.

The second section that is of import to this case is § 655.207(c) which was intended to complement and "clarify" § 655.202(b)(9) discussed above. 43 Fed.Reg. 10306, 10310 (March 10, 1978). Section 655.207(c) provides:

> In any year in which the applicable AER is increased, employers shall adjust their piece rates upward to avoid requiring a worker to increase his or her productivity over the previous year in order to earn an amount equal to what the worker would earn if the worker were paid at the AER.

The terms of this regulation clearly mandate that piece rates be tied to the AER. If the AER is increased, this section requires that the piece rate be increased accordingly so that an employee can earn the same salary without need to increase productivity. This provision clearly aims at preventing growers from raising productivity rates rather than piece rates whenever the AER increases. The legislative history indicates that the regulation was intended to eliminate this abuse. 43 Fed.Reg. at 10309–10.

Defendant does not dispute the apparent meaning of § 655.207(c). Instead, the DOL relied upon General Administration Letter ("GAL") No. 46–81, an interpretive letter that the department had previously issued, as providing the proper interpretation of this section. GAL No. 46–81 states that an employer may fulfill its obligations under § 655.207(c) by "adjust[ing] the previous season's piece rate upward to a point where the employer's average worker in that activity will make hourly earnings equal to the season's applicable wage rate." This letter would allow an employer to increase its expected productivity rate if the average workers in the previous year produced in excess of that rate. The employer would only be required to increase the piece rate if the increase in the productivity rate did not offset the rise in the AER. This interpretation appears directly contrary to the plain meaning of § 655.207(c)[8], and will also penalize the workers in that it will reduce their earnings.

In any event, GAL No. 46–81 is not authoritative. In order for such agency action to have the force of law there must be advance notice and public participation. 5 U.S.C. §§ 552(a)(1)(D). 553(b)(3)(A). *See Batterton v. Marshall,* 648 F.2d 694, 701 (D.C.Cir.1980). In the absence of compliance with this procedure, the agency action

---

7. Defendant argues that plaintiffs' suit is little more than an attempt to compel the DOL to raise wages, which it contends is beyond the DOL's authority. *See Williams v. Usery,* 531 F.2d 305 (5th Cir.1976). However, *Williams* was decided in 1976 before § 655.207(c) the primary regulation with which this suit is concerned was promulgated. *Williams* thus provides little guidance.

8. Defendant notes that in 1979 a rulemaking proceeding was conducted that considered adopting plaintiff's position here—that piece rates increase proportionately with increases in the AER—but that proposal was rejected.

This, they argue, is proof that the regulations in their current form do not support plaintiff's position. The Court is unconvinced by this argument. The Court stands in no position to evaluate the 1979 rulemaking procedure nor to determine why the proposed rule was not put into effect. It believes that the mere existence of such a proceeding is of no value as proof of what the current regulations require. Additionally, the Court notes the potential dangers of relying for authority upon the morals of legislation and regulations that have *not* been passed.

is nonbinding and "carr[ies] no more weight on judicial review than [its] inherent persuasiveness commands." *Id.* at 702. As indicated above, the Court is unpersuaded of the rectitude of GAL No. 46–81 in light of its apparent conflict with the plain language of § 655.207(c).

The Court is convinced that the language of §§ 655.202(b)(9)(ii) and 655.207(c) is controlling in this case, and that that language ties the piece rate to the AER, and, therefore, requires the DOL to retain a constant productivity rate. The statute is clear—employees should not be forced to increase their productivity when the AER is increased. Yet, this is exactly the situation that occurred in this case. The growers first attempted to effectuate an increase in the productivity rate to offset increases in the AER in 1979. In that year, the increase was rejected by the DOL. In 1980, and, thereafter, the growers were able to elicit DOL's approval of their applications although the growers increased their expected productivity from 80 bushels to 80 boxes at the expense of many workers. But the Court finds here that granting that approval was contrary to the law.

Defendant argues that binding the growers to the productivity rate set forth in their 1977 applications—80 bushels per day—is unfair because productivity will vary yearly with differences in the weather and crop and the piece rate should be varied accordingly to reflect such differences. The Court finds some merit in this argument. However, it is more concerned with the possibility of abuse inherent in allowing the growers to increase their expected rate of productivity to offset increases in the AER—an abuse which the regulations were specifically aimed at containing. The Court seeks to prevent growers from penalizing the workers by paying them less because of the increased work required for piece work pay. Thus, the Court holds that the productivity rate should be held constant at 80 bushels per day. The Court believes that this rate is proper for several reasons. First, it was the rate proposed by all three growers when they applied for certification in 1977—a rate which presumably was based on the growers' past experience. Second, all three growers also set forth the 80 bushel rate in their 1978 applications. Third, in 1979 when the growers attempted to increase the productivity rate to 80 boxes (or 90 bushels) per day, the DOL rejected their applications. Only when they were adjusted to reflect the 80 bushels rate were the applications for certification granted. It thus appears to the Court that the 80 bushel rate is the standard rate of productivity from which the piece rate should be calculated unless and until the DOL undertakes a proper and lawful rulemaking proceeding to establish a different rate of productivity.

## IV

### THE COURT CAN PROPERLY DECIDE THIS CASE WITHOUT JOINING THE GROWERS

■ Defendant contends that the growers are indispensable parties under Rule 19 Fed.R.Civ.Pro., and, that, therefore, this suit cannot properly proceed without joining them as co-defendants. In support of this claim they assert that the relief sought requires the grower to give money to the plaintiffs; thus, the growers are the parties most effected by the litigation. The Court disagrees.

This suit requires determination of one basic issue—whether the DOL is complying with its own regulations. Clearly the ruling of the Court will effect all those people who are effected by the regulations at issue. But this fact does not make all of those effected individuals indispensable parties. Courts have often held that in suits to compel federal agencies to obey the law the countless people or entities who would be effected thereby do not become necessary parties. See 3A *Moore's Federal Practice* ¶ 19.07–1[2] n. 9 at 19–131 (2d ed. 1982). *See e.g., Kirkland v. New York Department of Correctional Services,* 520 F.2d 420 (2d Cir.1975); *Swomley v. Watt,* 526 F.Supp. 1271, 1273 (D.D.C.1981); *NAACP v. Brennan,* 360 F.Supp. 1006, 1019 (D.D.C.1973).

Defendant gives as a further reason for requiring joinder of the growers that otherwise defendant could be subjected to multiple litigation and inconsistent court orders. However, the Court is not convinced that this problem will eventuate because it believes that any other court faced with a suit by the growers would act in accordance with principles of comity. It is well established that defendant is bound to act in accordance with this Court's order unless it is modified or reversed and no court should order defendant to act otherwise. *See generally, Adams v. Bell,* No. 81–1715 (D.C.Cir. August 24, 1982); *GTE Sylvania Inc. v. Consumers Union of the United States Inc.,* 445 U.S. 375, 386–87, 100 S.Ct. 1194, 1201–02, 63 L.Ed.2d 467 (1980).

## V

REMEDY: THE COURT WILL ISSUE A DECLARATORY JUDGMENT THAT THE PIECE RATE SHALL BE TIED TO THE AER AT THE STANDARD RATE OF PRODUCTIVITY AND ORDER AN INCREASE IN THE PIECE RATES TO THE LEVEL OF THE 1981 AER BUT THE COURT DECLINES TO GRANT BACK PAY OR TO ASSUME A 7% INCREASE IN THE AER FOR THIS YEAR

■ The plaintiffs request three items of relief. First, they seek a declaration that defendant has failed to properly enforce its regulations, particularly § 655.207(c), by failing to require employers to adjust piece rates to match increases in the AER. The Court grants this relief and such a declaration is set forth in the Order of even date which accompanies this opinion.

Second plaintiffs ask the Court to require defendant to condition certification for 1983, and thereafter, upon an agreement by the growers to make whole the workers in the 1980 and 1981 seasons who, pursuant to the terms of this decision, were underpaid. The Court believes that it cannot grant this remedy in equity and good conscience. The

burden of such an Order would fall heavily upon the growers effected by this case, inflicting upon them a loss that they may be forever unable to recoup.

Presumably, the price of apples in 1980 and 1981 reflected the cost of labor to these growers and was set at an appropriate level to allow them to make a reasonable profit. Retrospectively increasing that cost would put the growers in a difficult position because they are, of course, unable to increase the cost of the 1980 and 1981 applies to reflect the true cost of labor. Thus, the only alternative available to the growers would be either to greatly increase the price of 1982 apples, possibly pricing themselves out of the market, or to attempt to absorb significant losses. The Court does not feel that the facts of this case justify this result. Although the growers have exhibited far less than generosity toward their workers and have attempted to stretch the law to its limits, it was the action of defendant DOL in *mis*interpreting the bounds of the law that caused the problem here. The growers should not be forced to bear the cost. Moreover, the Court notes that plaintiffs could and should have brought this action in 1980 and 1981 to obtain the remedy sought.

Finally, plaintiffs appeal to the Court's inherent equitable power to require that piece rates for 1982 be based on an AER presumed to be 7% higher than the 1981 AER. They propose this 7% figure based on economic data including the consumer price index.

The Court recognizes that it has the power to grant broad relief even though it may entail approximation or uncertainty. *See e.g., International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 372, 97 S.Ct. 1843, 1873, 52 L.Ed.2d 396 (1977). However, the Court is unwilling to stretch its equitable powers to this extent in this case. The AER is formulated through a process of complex calculations performed by the DOL based on a variety of data. The Court is ill equipped to even approximate such calculations.[9] Moreover, were

---

**9.** Additionally, the Court notes that the AER is based on the prevailing wage rate in the area of

employment not on consumer prices. Thus, the Consumer Price Index and similar econom-

the Court to make an erroneous calculation of the AER for 1982 this would result in irreparable harm to the growers. If the Court were to assume a 7% increase and order the growers to pay at that rate, and the AER was later determined to be lower, the growers would be unable to recover the overpayments. They would thus suffer an unrecoverable loss.[10] Nevertheless, the Court is convinced that the AER for 1982 could not be lower than the 1981 rate, and, it, therefore, orders that the piece rates for 1982 be determined according to the 1981 AER until the 1982 rate is formulated.

Plaintiffs contend that declaring an increase in the AER is the only way to guarantee them adequate relief. They explain that the AER sets the floor for wages, with most employers of only American workers paying a few cents more than the AER. Thus they contend that although retrospective relief could be granted to the plaintiffs who are employees of the named growers, such relief could never compensate for the adverse effect that the existence of the current lower rate will have on the bulk of the class—similarly situated American workers. The Court recognizes the problem that plaintiffs detail. However, for the reasons stated above, it must refuse the remedy sought. Additionally, the Court notes that this Opinion and Order should mitigate some of the harm that plaintiffs allege. First, this Opinion will raise the piece rate to a level equivalent to last year's AER on the basis of 80 bushels rather than boxes thus eliminating part of the alleged adverse effect. Second, the existence of this Courts' Order requiring payment of increased wages, if the AER is determined to be higher, may be sufficient to increase the wage rates in the area, and, thus decrease any depressive effect that use of the 1981 AER might have.

An Order in accordance with foregoing shall be issued of even date herewith.

---

ic indicators provide little guidance to the Court. Similarly, data as to nationwide average earnings is of little use in determining the prevailing rate in the area of employment.

**10.** Applying plaintiffs' argument *infra*—that rates paid by growers who receive temporary labor certification and thus are bound by the

## ORDER

For the reasons set forth in the Memorandum Opinion in the above-captioned action, issued of even date herewith it is, by the Court, this 3rd day of September, 1982,

ORDERED, ADJUDGED and DECREED that plaintiffs' motion for summary judgment is granted in major part, plaintiffs' motion for a preliminary injunction is denied as moot, and defendant's motion for summary judgment is denied; and it is further

ORDERED, ADJUDGED, and DECREED that the relief granted is awarded to a plaintiff class consisting of plaintiffs and all others similarly situated, namely, all farmworkers who were employed by Ewers Orchards, Mount Level Orchards, Tri-County Growers, Inc., or any agent, predecessor, or member of Tri-County Growers, Inc. (referred to collectively as "the grower"), at any time during the 1980 and 1981 harvesting seasons; and all United States farmworkers who intend to seek or are seeking employment in West Virginia for the 1982 harvesting season and whose wages or working conditions may be adversely affected by the acts complained of; and it is further

ORDERED, ADJUDGED and DECREED that defendants, their agents, officers, employees, and successors, and all person in active concert or participation with them, be and hereby are enjoined from granting the 1982 applications for temporary labor certification submitted by any of the growers unless and until the growers agree to increase the piece rates offered to workers to at least 37 cents per bushel and 41 cents per box which is the correct rate based upon the 1981 AER and a productivity rate of 80 bushels per day; and it is further

---

AER, set the tone for all growers—the Court recognizes that an erroneously high estimate of the AER could have a compounded effect. Rather than resulting in overpayment by only growers seeking certification, it would result in overpayments by all growers in the area.

ORDERED, ADJUDGED and DECREED that defendants, their agents, officers, employees, and successors, and all persons in active concert or participation with them, be and hereby are enjoined from granting the 1982 applications for temporary labor certification submitted by any of the growers unless and until the grower agrees to pay all workers at the 1982 the adverse effect rate established by the Department of Labor upon conclusion of its rulemaking proceeding and the grower takes all appropriate action to ensure that workers in the 1982 harvest season will receive all pay due to them should the adverse effect rate not be established until after the 1982 harvest season is over; and it is further,

ORDERED, ADJUDGED and DECREED that certification for the 1983 season shall be conditioned upon each grower's agreement to fulfill their obligations under this Order and it is further,

ORDERED, ADJUDGED and DECREED that defendants, their agents, officers, employees, and successors, and all persons in active concert or participation with them are hereby enjoined from granting temporary labor certification to growers unless the grower agrees to state in any recruiting material distributed to persons seeking employment for the 1982 harvest season that the stated adverse effect rate and piece rates may be increased and if so, the workers will be entitled to receive the full amount of that increase for all work done during the season at the conclusion of this season; and it is further,

ORDERED, ADJUDGED and DECREED that the Order extending the temporary restraining order granted on August 27, 1982 is hereby dissolved and the moneys deposited in escrow pursuant to the Temporary Restraining Order granted August 20, 1982 shall be returned, to the plaintiffs in the amount deposited; and it is further

ORDERED, ADJUDGED and DECREED that henceforth the Department of Labor, their agents, officers, employees, and successors, and all persons in active concert or participation with them shall refuse certification to growers who do not offer a piece

rate proportional to the adverse effect rate as determined by the standard productivity rate of 80 bushels per day; and it is further,

ORDERED, ADJUDGED and DECREED that the standard productivity rate of 80 bushels per day shall remain in effect unless and until the Department of Labor shall undertake a proper and lawful rulemaking procedure changing such basis of piece work method of payment to the workers, if such is justified on the basis thereof.