737 F.2d 67
 237 U.S.App.D.C. 285, 101 Lab.Cas. P 34,554
 NATIONAL ASSOCIATION FOR ADVANCEMENT OF COLORED PEOPLE,
JEFFERSON COUNTY BRANCH, et al.
v.
Raymond J. DONOVAN, Secretary, U.S. Department of Labor, et
al., Appellants. (Two cases)
 Nos. 83-1919, 83-2165.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 7, 1984.
Decided June 12, 1984.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 82-02315).
 Michael Kimmel, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty., Dept. of Justice, and Joseph E. diGenova, U.S. Atty., Washington, D.C., were on the brief, for appellants.
 Thomas Dunn Goldberg, Washington, D.C., with whom Philip A. Lacovara and Ronald A. Stern, Washington, D.C., were on the brief, for appellees.
 Before MIKVA, BORK and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 This appeal arises from a lawsuit challenging the Department of Labor's (DOL or Labor Department) method for calculating minimum wage rates for migrant farmworkers. The lawsuit was brought by appellees under the Immigration and Nationality Act, 8 U.S.C. Sec. 1101(a)(15)(H)(ii) (1982), and its implementing regulations, 8 C.F.R. Sec. 214.2(h)(3)(i) (1984); 20 C.F.R. Sec. 655 (1983). Appellees challenge the procedures used by DOL to certify that the employment of temporary foreign labor will not "adversely affect" the wages and working conditions of similarly situated U.S. workers. The district court granted summary judgment for appellees in two earlier phases of this litigation, holding that DOL's method for calculating minimum wage rates for migrant farmworkers was contrary to DOL's own regulations. NAACP v. Donovan, 558 F.Supp. 218 (D.D.C.1982) (NAACP I); NAACP v. Donovan, 566 F.Supp. 1202 (D.D.C.1983) (NAACP II). DOL does not challenge those earlier decisions.
 
 
 2
 Following the district court's issuance of NAACP II, DOL amended one of the regulations that had been at issue in the earlier litigation. The narrow issue presented in this appeal is the validity of an interlocutory order issued by the district court enjoining DOL from implementing that regulation. We reverse the district court as to the issuance of that preliminary injunction, but express no views on the merits of appellees' substantive challenge to the validity of the amended regulation, a question that is currently pending before the district court.
 
 BACKGROUND
 
 3
 This case arises under a complex statutory and regulatory scheme designed to provide for the temporary importation of foreign labor to alleviate domestic labor shortages and to ensure that U.S. workers are protected adequately from the economic impact resulting from the employment of foreign workers. Congress has given the administering agencies considerable discretion in developing a program to serve these dual, and sometimes conflicting, purposes.
 
 
 4
 In 1952, as part of a major overhaul of the nation's immigration laws, Congress created a new class of "nonimmigrants" who could be admitted to the United States on a temporary basis to alleviate labor shortages. The Immigration and Nationality Act (the Act) defines a nonimmigrant to include "an alien having a residence in a foreign country which he has no intention of abandoning ... (ii) who is coming temporarily to the United States to perform temporary service or labor, if unemployed persons capable of performing such service or labor cannot be found in this country ...." 8 U.S.C. Sec. 1101(a)(15)(H)(ii) (1982) (emphasis added). Section 214(c) of the Act gives the Attorney General broad authority to determine whether an "H-2" temporary visa should be granted to a nonimmigrant in "any specific case or specific cases ... after consultation with appropriate agencies of the Government, upon petition of the importing employer." 8 U.S.C. Sec. 1184(c) (1982). Those two provisions of the Act provide the statutory framework for the regulations involved in this appeal.
 
 
 5
 The Attorney General, acting through the Immigration and Naturalization Service (INS), has delegated to DOL the responsibility for determining the nonavailability of U.S. workers for purposes of issuing H-2 visas. Before issuing an H-2 visa, the INS requires each petitioning employer to obtain "a certification from the Secretary of Labor ... stating that qualified persons in the United States are not available and that ... employment of the beneficiary will not adversely affect the wages and working conditions of workers in the United States similarly employed ...." 8 C.F.R. Sec. 214.2(h)(3)(i) (1984).
 
 
 6
 The Labor Department procedures for certifying employers who seek to employ nonimmigrant foreign agricultural workers on a temporary basis are set forth at 20 C.F.R. Sec. 655 (1983). One purpose of the temporary labor certification regulations is to ensure that use of foreign workers does not depress the wages of U.S. workers. To achieve that goal, DOL has established a minimum hourly rate--called the "adverse effect rate" (AER)--that an employer must agree to pay U.S. workers before it can be certified to employ temporary foreign workers. The AER is determined on a state-by-state basis, and is based on surveys of U.S. wages for agricultural labor in each area. The regulations provide that the AER shall be "the prevailing wage rate[ ] in the area of intended employment." 20 C.F.R. Sec. 655.207(a) (1983). The AER can be set at a rate higher than the prevailing wage rate, however, if it is determined "that the use of aliens has depressed the wages of similarly employed U.S. workers." 20 C.F.R. Sec. 655.200(b) (1983).
 
 
 7
 Although the AER establishes the minimum hourly rate that must be offered U.S. workers, for many crops wage rates are set, not by the hour, but by the "piece"--the number of bushels or boxes that a worker picks. To ensure that the regulations protect U.S. workers who are paid by the piece, DOL requires employers to offer piece rates that produce average hourly earnings at least equal to the AER for that area. 20 C.F.R. Sec. 655.202(b)(9)(ii) (1983). Because the AERs change from year to year, section 655.207(c) of the regulations (also referred to as "the piece rate regulation") provides that piece rates be adjusted accordingly. 20 C.F.R. Sec. 655.207(c) (1983). This litigation involves the method for calculating piece rates under section 655.207(c).
 
 
 8
 To calculate a piece rate under the regulatory scheme created by DOL, it is necessary to estimate a worker's hourly productivity rate. The piece rate multiplied by the productivity rate must be at least as high as the AER. Theoretically, an employer can increase either the piece rate or the productivity rate in order to meet any increases in the AER. Appellees claim that DOL has certified growers who make upward estimates in the productivity rates expected of workers instead of raising the piece rates offered to those workers when the AER increases. They argue that this result is contrary to DOL's own regulatory scheme.
 
 
 9
 In the initial lawsuit filed in 1982, two U.S. migrant farmworkers and the Jefferson County, West Virginia branch of the NAACP filed suit on behalf of all U.S. migrant farmworkers seeking employment in West Virginia. They alleged that DOL had certified three West Virginia growers without requiring them to adjust their piece rates upward to reflect increases in the AER as required by section 655.207(c) of the regulations. That section, which was promulgated in 1977, provides:
 
 
 10
 In any year in which the applicable adverse effect rate is increased, employers shall adjust their piece rates upward to avoid requiring a worker to increase his or her productivity over the previous year in order to earn an amount equal to what the worker would earn if the worker were paid at the adverse effect rate.
 
 
 11
 20 C.F.R. Sec. 655.207(c) (1983). The plaintiffs did not allege that the regulation violated the agency's statutory mandate, but argued instead that, by permitting the growers to offset increases in the AER by raising the productivity rate expected of an average worker, DOL had failed to enforce section 655.207(c).
 
 
 12
 The district court entered summary judgment for the plaintiffs. NAACP v. Donovan, 558 F.Supp. 218 (D.D.C.1982) (NAACP I ). The court concluded that the language of sections 655.207(c) and 655.202(b)(9)(ii) requires DOL to retain a constant productivity rate when determining whether piece rates yield average hourly earnings at least as high as the AER. Id. at 223. Because a standard productivity rate must be used, the court concluded that the regulations require growers to increase piece rates proportionately to any increases in the AER. The court explicitly rested its holding on an interpretation of the existing regulations, not upon the underlying statutory scheme. It ordered DOL to use a standard productivity rate based on the rate used by the three growers in 1977 when the piece rate regulation first went into effect. Id.
 
 
 13
 The Labor Department did not appeal from NAACP I. It complied with the court's order with respect to certification of the three West Virginia growers and established a 1982 AER for West Virginia, but took no steps to establish 1982 AERs for most other states. It also failed to apply the district court's interpretation of the piece rate regulation to certifications in states other than West Virginia. In light of DOL's narrow application of the NAACP I injunction, the original plaintiffs, joined by several individuals from nine other states and a farmworker rights organization with members throughout the country, filed an amended supplemental complaint on behalf of a nationwide class of migrant farmworkers who work in states affected by DOL's temporary labor certification program. In its second summary judgment for plaintiffs, the district court held, inter alia, that DOL has an obligation to promulgate AERs annually. NAACP v. Donovan, 566 F.Supp. 1202, 1206 (D.D.C.1983) (NAACP II ). With regard to the piece rate calculations, the court relied upon its earlier decision in NAACP I and ordered DOL to apply a standard rate of productivity in calculating piece rates under section 655.207(c). Id. at 1207-08. The court ordered DOL to determine the standard productivity rate according to the productivity rates in effect for growers in 1977. The court's rationale for relying on the 1977 productivity rates was that the growers had less incentive to inflate estimates of their employees' productivity prior to promulgation of section 655.207(c). Id. at 1208-09.
 
 
 14
 Following the district court's decision in NAACP II, DOL published a notice of proposed rulemaking to amend section 655.207(c), the piece rate regulation that provided part of the basis for the court's two decisions. 48 Fed.Reg. 33,68 4 (1983). The agency initially limited the proposed comment period to two weeks in light of the "impending" fall harvest season, id., but subsequently extended the comment period to thirty days. 48 Fed.Reg. 35,667 (1983). Eleven days after the close of the comment period, DOL published a final rule amending the piece rate regulation. 48 Fed.Reg. 40,168 (1983). The amended rule, which took effect immediately, established a new method for increasing piece rates to match an increase in the AER. It established a new productivity rate based on "the average U.S. worker['s]" level of productivity. No methodology was developed for determining what constitutes the average productivity of U.S. workers; the determination of that method was left to agency officials.
 
 
 15
 Immediately after publication of the amended piece rate regulation, appellees filed a motion to enjoin enforcement of the regulation on the ground that it violated the district court's order in NAACP II. Appellees alleged, inter alia, that the regulation had been promulgated in violation of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 551 et seq. (1982), and that DOL had failed to adhere to the court's injunction in NAACP II. Two days later, the court granted appellees' motion and suspended the effective date of the amended regulation indefinitely, pending further order of the court. In that interlocutory injunction (the September order) the court also: 1) ordered DOL not to grant any further labor certifications based on the amended regulation; 2) revoked any such certifications already granted in cases where visas had not yet been issued by the INS; and 3) ordered DOL to notify growers to place in escrow the difference between wages actually paid to workers and the amount to which workers would be entitled under the NAACP II order. Maintenance of the escrow accounts also was made a condition to the grant of certification in 1983 for growers who had not yet received final INS approval to employ foreign workers. As for the vast majority of growers who already had received their 1983 certification, the court ordered DOL to notify them that maintenance of the escrow accounts would be a condition to their certification for the 1984 harvest season.
 
 
 16
 The Labor Department here appeals from the district court's September order. (Although DOL's appeal from NAACP II has been consolidated with its appeal from the September order, DOL now seeks review of only the latter.) DOL argues that promulgation of the amended piece rate regulation did not violate the district court's injunction in NAACP II, that, in any event, the regulation is valid under the APA, and that the district court abused its discretion when it conditioned certifications for future harvest seasons on an employer's compliance with the court's wage escrow orders.
 
 ANALYSIS
 
 17
 There are two possible sources of authority for the district court's order enjoining implementation of the amended regulation. The first--and the one apparently relied upon by the district judge--is a court's inherent power to ensure compliance with a pre-existing court order. The second--and the one pressed upon us now by the parties--is the district court's general equitable power to issue preliminary injunctive relief. See generally Fed.R.Civ.P. 65.
 
 
 18
 Because the district court's explanation of its order is crucial to our disposition of this appeal, we quote from that order at length. The court introduced the order by explaining:
 
 
 19
 This matter having come before the Court on plaintiffs' motion for further relief to enforce the Court's order of June 28, 1983, and the Court having considered the motion and the arguments of counsel, and having determined (i) that defendants have certified, agreed to certify, and intend to certify the applications of growers who offer piece rates lower than those required by [NAACP II ], (ii) that defendants as of the date of this Order have neither requested modification of [the NAACP II order] nor made a showing justifying such a modification, (iii) that there is substantial doubt that defendants could supersede this Court's order simply by promulgating a new regulation without obtaining modification of that order, and further substantial doubt that the regulation published on September 2, 1983, purportedly amending 20 C.F.R. Sec. 655.207(c) was adopted in conformity with the Administrative Procedure Act, and (iv) that unless relief is granted as specified below, members of the plaintiff class will suffer injury for which they will have no adequate remedy at law ....
 
 
 20
 NAACP v. Donovan, No. 82 Civ. 2315 (D.D.C. September 8, 1983) (emphasis added). Based on the record before us, particularly the language of this order and the holdings of the district court in NAACP I and NAACP II, we conclude that the September order cannot be sustained either as an order enforcing the court's earlier mandate or as a grant of preliminary relief growing out of appellees' procedural and substantive challenges to the amended regulation.
 
 
 21
 I. The District Court's Authority to Enforce its Prior Rulings
 
 
 22
 The district court based the September order on its conclusion "that there is substantial doubt that defendants could supersede this Court's [NAACP II ] order simply by promulgating a new regulation without obtaining modification of that order." We disagree. Under the terms of the court's decisions in NAACP I and NAACP II, the Labor Department was free to amend its regulations through proper rulemaking proceedings. The orders of the district court in both NAACP I and NAACP II were premised on a finding that the Labor Department had violated its own regulations. In NAACP I, the court established a "standard rate of productivity from which the piece rate should be calculated unless and until the DOL undertakes a proper and lawful rulemaking proceeding to establish a different rate of productivity." 558 F.Supp. at 223 (emphasis added). In NAACP II, the court indicated that the entire AER method of calculating rates was not mandated by statute, but was within DOL's "discretion to determine how to effectuate its mandated duties." 566 F.Supp. at 1206 n. 7. Thus, while the court's orders enjoined DOL from using any productivity rate other than the one described by the court, it is clear that those injunctions were premised on the finding that DOL had violated its own regulations.
 
 
 23
 It is both logical and precedented that an agency can engage in new rulemaking to correct a prior rule which a court has found defective. See Center for Science in the Public Interest v. Regan, 727 F.2d 1161, 1164-65 (D.C.Cir.1984); Action on Smoking and Health v. CAB, 713 F.2d 795, 802 (D.C.Cir.1983). Where an injunction is based on an interpretation of a prior regulation, the agency need not seek modification of that injunction before it initiates new rulemaking to change the regulation. This case is unlike the situation we faced recently in International Ladies' Garment Workers' Union v. Donovan, 733 F.2d 920 (D.C.Cir.1984) (Donovan II ) where DOL issued, without notice or comment, an "emergency" rule that suspended the effect of a prior court order. In Donovan II, the only effect of the emergency rule was to avoid compliance with that court order. No such claim can be made here. It is clear from our prior decisions and from the district court's holdings in NAACP I and NAACP II that the district court could not enjoin implementation of the amended regulation on the ground that it violated the court's earlier order.
 
 
 24
 II. The District Court's Authority to Issue a Preliminary Injunction
 
 
 25
 The parties invite us to treat the district court's order as a preliminary injunction issued on the basis of appellees' challenge under the APA to the validity of the amended regulation. We find that the district court's order cannot be sustained on that basis.
 
 
 26
 The standards governing the granting of interim relief in this circuit are well established. See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841 (D.C.Cir.1977); Virginia Petroleum Jobbers Association v. FPC, 259 F.2d 921 (D.C.Cir.1958). Before issuing a preliminary injunction, the district court must consider four factors: 1) whether the party seeking relief is likely to prevail on the merits; 2) whether that party will suffer irreparable harm if preliminary relief is not granted; 3) whether harm to other parties will result if the relief is granted; and 4) whether the public interest will be served if relief is granted. Virginia Petroleum Jobbers, 259 F.2d at 925. The district court did not include any such analysis in its order issuing the injunction. Under the circumstances presented here, that failure requires us to reverse the September order. Although we do not always require the district court to set out its reasoning in detail when it grants preliminary relief, in this case, it would be inappropriate for us to extrapolate the analysis missing from the district court's own order. Several factors compel us to reach that conclusion.
 
 
 27
 First, the plain language of the September order makes clear that it was issued to prevent the Labor Department from violating the court's injunction in NAACP II. The order began by referring to "plaintiffs' motion for further relief to enforce the Court's order of June 28, 1983...." Thus appellees' motion for interim relief was not based on a new complaint challenging the amended regulation; it was a motion to enforce the district court's prior injunction.
 
 
 28
 Second, the context in which the September order was issued suggests that the district court was responding to a history of reluctance on the part of DOL to adhere to the letter and spirit of the court's prior rulings, not to the validity of the new rule promulgated by the agency. The first "determination" made by the court in its September order was a finding "that defendants have certified, agreed to certify, and intend to certify the applications of growers who offer piece rates lower than those required" by the court's earlier injunction. In fact, the agency's alleged violation of NAACP II during the summer of 1983 is the subject of contempt proceedings now pending before the district court. The September order--including, in particular, the escrow requirements for growers who were not parties to any of the proceedings below--permitted the district court to freeze the status quo and prevent what appeared to the court to be another in a series of actions taken by DOL to avoid providing the relief sought by appellees throughout the earlier phases of this litigation.
 
 
 29
 Finally, we are reluctant to make even a preliminary finding on the merits of appellees' APA claims on the basis of the record before us. The district court's sole reference to the merits of appellees' challenge to the amended regulation was its statement that there was "substantial doubt that the regulation published on September 2, 1983, purportedly amending 20 C.F.R. Sec. 655.207(c) was adopted in conformity with the Administrative Procedure Act ...." Appellees raised both procedural and substantive claims against the regulation and the court's order does not indicate which of those claims it was considering. The district court's "substantial doubt" concerning whether the amended regulation was promulgated in accordance with APA requirements reads like an afterthought to its more pressing concern that DOL not flout the court's prior orders.
 
 
 30
 Because the district court apparently issued the injunction on the basis of its authority to enforce a prior mandate, its failure to analyze whether preliminary injunctive relief was warranted under the Virginia Petroleum Jobbers factors leaves the injunction without a sufficient underpinning. Although in some cases, we will flesh out that analysis on appeal, we think that the proceedings below preclude such an effort on our part. Nor do we think it appropriate to remand the preliminary injunction motion so that the district court can apply the proper test. Cf. Adams v. Vance, 570 F.2d 950, 955 n. 10 (D.C.Cir.1977) ("Under some circumstances, having found that the District Court had applied the wrong test, we would remand for reconsideration in light of the correct test.") Instead, we direct the district court to avoid the perils of trying to rehabilitate a very dubious interim relief proceeding; it should proceed immediately to a final determination on the merits of appellees' substantive and procedural challenges to the amended regulation.
 
 
 31
 Consistent with their invitation to have us treat the district court's order as a preliminary injunction based on appellees' APA claims, both sides urged this court to leap to a final determination on the validity of the amended regulation. We similarly decline the invitation to finally resolve the validity of the new regulation. That issue is not before us properly, and we believe that the district court should rule on the merits of appellees' claims in the first instance. Appellees have filed a motion for a permanent injunction in the district court and the parties' motions for summary judgment on the validity of the rule are currently pending there. The validity of the amended regulation turns on whether the agency adhered to the APA's procedural and substantive requirements and, in particular, on whether the agency supplied a reasoned basis for changing its regulation. We defer to the district court to conduct that analysis in the first instance. In this regard, the district court should treat appellees' motion challenging the amended regulation as a supplemental complaint, not as a motion to enforce the court's prior order.
 
 CONCLUSION
 
 32
 We vacate the district court's order of September 8, 1983 in its entirety, and thereby reinstate the regulation promulgated by DOL on September 2, 1983. See 48 Fed.Reg. 40,168 (1983) (to be codified at 20 C.F.R. Sec. 655.207). We recognize that our decision is likely to postpone a final determination on the validity of the amended regulation until after DOL has certified growers for the 1984 harvest season. But we decline to reach out and decide an issue that is not properly before us and that has not benefited from a full airing before and consideration by the district court. Our decision today is limited only to reversing the court's September order and is issued without prejudice to any of the other claims and motions currently pending before the district court.
 
 
 33
 It is so ordered.