**AFL–CIO, et al., Plaintiffs,**

v.

**Ann McLAUGHLIN, et al., Defendants,**

**and**

**National Council of Agricultural Employers, et al.,
Defendants–Intervenors,**

**and**

**American Farm Bureau Federation,
Defendant–Intervenor.**

**Civ. A. No. 87–1683.**

United States District Court,
District of Columbia.

Dec. 20, 1988.

Shelley Davis, Edward Tuddenham, Migrant Legal Action Program, Washington, D.C., Garry G. Geffert, West Virginia Legal Services, Martinsburg, W.Va., David Silberman, Associate Gen. Counsel, AFL–CIO, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Drake Cutini, U.S. Dept. of Justice, Washington, D.C., for Federal defendants.

John M. Simpson, Robert A. Burgoyne, Fulbright & Jaworski, Washington, D.C., for National Council of Agr. Employers.

Kathryn A. Oberly, Michael F. Rosenblum, Patricia A. McCoy, Mayer, Brown & Platt, Washington, D.C., for American Farm Bureau Federation.

MEMORANDUM OPINION

SPORKIN, District Judge.

On this date, in a separate opinion, I enjoined the Department of Labor ("DOL"

or "Department") from implementing the new Adverse Effect Wage Rate regulations it adopted in 1987 ("AEWR Opinion"). Now before me is a related regulation which is intended to provide protection for farmworkers paid on a piece rate basis. 20 C.F.R. Sec. 655.102(b)(9)(ii) (April 1, 1988); 52 Fed.Reg. 20515 (June 1, 1987).[1] Plaintiffs argue that the regulation is "arbitrary, capricious, . . . or otherwise contrary to law," 5 U.S.C. Sec. 706(2)(A) (1982), and have moved to have the regulation remanded to the DOL for further explanation. The matter has been fully briefed and hearings were held on April 29 and October 18, 1988. I am now prepared to rule on this matter.

## I. BACKGROUND

Congress has explicitly provided that foreign workers may be brought into the United States as temporary, non-immigrant workers to provide services for which no U.S. workers are available. However, before allowing these alien workers to enter the U.S., Congress requires that certain preconditions be met. Presently, these preconditions are set forth in the Immigration Reform and Control Act of 1986 ("IRCA"). *See* 8 U.S.C. Sec. 1186(a)(1) (1982 & Supp. IV 1986).

The relevant provision of IRCA provides that, before the Attorney General approves a petition for importation of temporary, non-immigrant agricultural workers, the employer desiring to import aliens seek certification from the Secretary of Labor that:

(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and

(B) the employment of the alien in such labor or services will not *adversely affect* the wages and working conditions of workers in the United States similarly employed.

*Id.* This provision expresses a two-decade old policy of protecting U.S. workers from the effects of importing temporary foreign workers into U.S. labor markets. *See* 8 U.S.C. Sections 1101(a)(15)(H)(ii), 1184 (codified as amended at 8 U.S.C. 1186(a)) (1982 & Supp. III 1985).

By custom, farm laborers are compensated by two distinct methods. Farmworkers receive either an hourly wage or are paid by the piece, i.e. based on the workers productivity. Therefore, DOL has designed two methods of protecting U.S. workers. The first method provides for the payment of Adverse Effect Wage Rates ("AEWRs") to workers paid on an hourly basis. Basically, AEWRs provide a premium that is added to the average hourly wage. This premium is intended to compensate for wage depression that is caused by the increased labor supply that results from the importation of alien workers.

The second method of protection provides for the payment of a piece rate to workers paid by the piece. Specifically, in the past DOL adopted regulations that required employers who paid workers on a per piece basis to pay wages that were "designed to yield" the AEWR. The "designed to yield" provisions required that the piece rate be set at a level that would provide "the average worker" with a wage equivalent to, or exceeding, the hourly AEWR. *See, e.g.,* 20 C.F.R. 655.207(c) (1983); 20 C.F.R. 602.10b(a)(2) (1971). These piece-rate regulations have been the source of extended litigation and are central to the case now before the court.[2]

---

**1.** Plaintiffs' piece rate claim was initially addressed in *AFL–CIO v. Brock,* 668 F.Supp. 31, 33 n. 2 (D.D.C.1987). At that time, I enjoined DOL from implementing its new piece rate regulation. *Id.* at 40 n. 11. Subsequently, the Court of Appeals remanded that decision. *See AFL–CIO v. Brock,* 835 F.2d 912, 913 n. 2 (D.C.Cir. 1987).

**2.** *See NAACP, Jefferson County Branch v. Donovan,* 765 F.2d 1178 (D.C.Cir.1985), *reversing,* Civ.

No. 82–2315 (D.D.C. Aug. 15, 1984) [1984 WL 3184] (*"NAACP III"*); *NAACP, Jefferson County Branch,* 737 F.2d 67 (D.C.Cir.1984), *reversing and remanding,* Civ. No. 82–2315 (D.D.C. Sept. 8, 1983); *NAACP, Jefferson County Branch v. Donovan,* 566 F.Supp. 1202 (D.D.C.1983) (*"NAACP II"*); *NAACP, Jefferson County Branch v. Donovan,* 558 F.Supp. 218 (D.D.C.1982) (*"NAACP I"*).

Litigation over the piece rate began in 1982 when it came to light that several growers were assuring that "the average worker" earned more than was required by the "designed to yield" provision required by simply demanding that the worker be more productive. Workers filed a class action challenging this practice. The workers argued that it was improper for growers to satisfy the piece rate "designed to yield" provision by requiring increased productivity on the part of workers. *See NAACP, Jefferson County Branch v. Donovan,* 558 F.Supp. 218, 222 (D.D.C. 1982) (*"NAACP I"*); *see also NAACP, Jefferson County Branch v. Donovan,* 566 F.Supp. 1202, 1206 (D.D.C.1983) (*"NAACP II"*).

Judge Richey, in *NAACP I* and *NAACP II,* ruled that DOL's piece-rate regulations precluded the growers' practice.[3] Further, Judge Richey held that the DOL piece-rate regulations, by their own terms, required that piece rates be proportionally related to the AEWR. Judge Richey stated:

> if the [AEWR] is increased, ... the piece rate [must] be increased accordingly so that an employee can earn the same salary without need to increase productivity. This provision clearly aims at preventing growers from raising productivity rates rather than piece rates whenever the [AEWR] increases.

*NAACP I,* 558 F.Supp. at 222; *see also NAACP II,* 566 F.Supp. at 1206.[4] Since this ruling, the piece rate has increased proportionally with the AEWR.

In 1983, DOL proposed to amend the 1978 piece rate regulation. The regulation DOL sought to implement would have done away with the practice of proportionally increasing the piece rate with the AEWR. In its place, DOL sought to adopt a regulation that would provide for increases in the piece rate based on a formula comparing the previous year's average piece rate with the AEWR. *See* 48 F.Reg. 40,168, 40,175 (1983); *see also NAACP v. Donovan,* 765 F.2d 1178 (D.C.Cir.1985) (*"NAACP III"*).

Although the district court upheld the proposed piece-rate regulation, the Court of Appeals found that DOL had failed to provide a reasoned explanation for its departure from past policy. In particular, the Court was concerned that once again employers would be able to satisfy the "designed to yield" provision by simply raising the required level of productivity. Therefore, the case was "return[ed] ... to DOL so that the Department may proceed to reconsider the matter in a manner consistent with this opinion." *NAACP III,* 765 F.2d at 1185.

## II. DOL'S NEW PIECE–RATE REGULATION

At issue in the case now before the court is yet another attempt to revise the piece-rate regulation.[5] Specifically, plaintiffs'

---

**3.** The first of these regulations stated that "if the workers will be paid on a piece rate basis, the piece rate will be designed to produce average hourly earnings at least equal to the [AEWR]." 20 C.F.R. Sections 655.202(b)(9)(ii) (1984). This regulation went on to state that "[i]f the piece rate does not result at the end of the pay period in average hourly earnings ... at least equal to ... the [AEWR], the worker's pay will be supplemented at that time so that the worker's earnings are at least as much as the worker would have earned ... if the worker had been paid at the [AEWR]." *Id.* The second regulation stated:

> In any year in which the applicable [AEWR] is increased, employers shall adjust their piece rates upward to avoid requiring a worker to increase his or her productivity over the previous year in order to earn an amount equal to what the worker would earn if the worker were paid at the [AEWR].

655.207(c) (1984).

These regulations remained in force until DOL adopted the regulations at issue in this case.

**4.** *NAACP I* involved three West Virginia growers/employers; *NAACP II* extended the rulings to a nationwide class.

**5.** The proposed regulation, adopted in 1987, states:

> If the worker will be paid on a piece rate basis and the piece rate does not result at the end of the pay period in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate, the worker's pay shall be supplemented at that time so that the worker's's earnings are at least as much as the worker would have earned during the pay period if the worker had been paid at the appropriate hourly wage rate for each hour worked. ...

challenge the fact that the new regulation eliminates the practice of proportionally increasing the piece rate in step with the AEWR. Further, the new piece rate eliminates the "designed to yield" provision of past piece-rate regulations. *See* 20 C.F.R. Sec. 655.102(b)(9)(ii)(A) (April 1, 1988); 52 Fed.Reg. 20515 (June 1, 1987).

## III. STANDARD OF REVIEW

The standard of review in this case is identical to that in previous piece-rate litigation. *See NAACP III*, 765 F.2d at 1183–84. In reviewing the Department's explanation I must "consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 1183 (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–2867, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)); *see also AFL–CIO v. Brock*, 835 F.2d 912, 918 (D.C.Cir.1987).

Further, this is a case where DOL has changed a regulatory provision that has more than adequately fulfilled congressionally mandated objectives. It must be stressed that the Department is not simply proposing new regulations but is replacing regulations that concededly have been successful since 1982. Therefore, the Department must explain how the proposed regulations meet the objectives that Congress has set and that its former regulations have effectively fulfilled.

## IV. DISCUSSION

Plaintiffs' challenge is based on DOL's failure to explain how a piece rate that provides no wage enhancement can protect U.S. workers from the adverse affects of wage depression caused by the presence (and past presence) of alien workers. Further, plaintiffs seem to suggest that the only means to protect piece-rate workers is to provide an enhanced piece rate.

### A. IRCA Does Not Require An Enhanced Piece Rate

With respect to plaintiffs' contention that a separate wage enhancing piece rate is required by law, DOL responds that nothing in IRCA, 8 U.S.C. Sec. 1186(a)(1), requires that the piece rate provide for enhanced wages. The Department notes that it is left to DOL to determine how best to protect U.S. workers.

The Department at least in part is correct. Nothing in IRCA requires that both an AEWR and a separate wage enhancing piece rate be provided to farmworkers. The Court of Appeals explicitly held this to be the case in *NAACP III*. The Court stated that:

> *NAACP I* and *NAACP II* do not themselves prevent DOL from altering its piece rate regulation even in a way that would represent a dramatic shift in policy. Those decisions require only that the Department admit that the new regulation *is* a change of policy.

765 F.2d at 1183 (emphasis in original). Thus, the dispositive issue in this case is not whether DOL has eliminated a wage enhancing piece rate; rather, the dispositive issue is whether DOL has provided a reasoned explanation for its "dramatic shift in policy" fully demonstrating that its new policy will carry out congressional intent. *Id.; see also Brae Corp. v. United States*, 740 F.2d 1023, 1038 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1069, 105 S.Ct. 2149, 85 L.Ed.2d 505 (1985) ("agency must explain why the original reasons for adopting a rule or policy are no longer dispositive").

### B. DOL Has Failed To Provide A Reasoned Explanation

I find that key portions of the new regulation result in the unsupported abandonment of long standing policies. In particular, DOL has abandoned, without explanation, its policy of enhancing the wage of *all workers* paid by piece rate for a new and untried policy.

In the past, piece rate enhancements have been provided through two different means. First, the "designed to yield" pro-

20 C.F.R. Sec. 655.102(b)(9)(ii)(A) (April 1, 1988); 52 Fed.Reg. 20515 (June 1, 1987).

visions assured that every worker was paid a wage that would enable "the average worker" to equal or exceed the equivalent of the hourly AEWR. In fulfilling the "designed to yield" requirement, all workers' wages were enhanced.

Second, in the wake of *NAACP I, II* and *III,* AEWRs and piece rates were required to increase in lock-step. That meant that every time a percentage increase was added to the average hourly wage, thereby establishing the AEWR, the same percentage increase was applied to the piece rate.

Both of these policies were effective and proved successful in carrying out congressional intent. DOL's new piece-rate regulation discards both these long standing policies. *See NAACP III,* 765 F.2d at 1183; 52 Fed.Reg. 11462 In their place, DOL has simply guaranteed that every worker shall receive, at minimum, the equivalent of the AEWR as applied to hourly workers. *See* 20 C.F.R. 655.102(b)(9)(B) (April 1, 1988). Thus, if a worker falls short of the equivalent of the hourly AEWR, he or she will receive make-up pay.[6]

In the past, piece rate workers have been protected by an enhanced wage produced by both the "designed to yield" provision and proportional increases. In abandoning its former policy, in which all piece rate workers received this enhanced wage, DOL has seemingly abandoned those farmworkers who are paid through the piece rate and who exceed the AEWR floor. While DOL correctly asserts that IRCA does not man-

date the piece rates that have existed in the past, it is clear that if DOL desires to adopt a new policy, it cannot simply abandon piece-rate workers. What is required is that before the DOL abandon its present policy and adopt a single tier method of protecting U.S. workers, it must explain its new policy and demonstrate that it will fulfill congressional objectives. This DOL has clearly failed to do.[7]

Again, I must state that DOL may well be able to provide a reasoned explanation for why its new regulation is justified under the relevant provisions of IRCA.[8] It may well be that a single AEWR covering both hourly wage and piece rate workers could fulfill the protective measures set forth in IRCA. Of course, such an extreme departure from the present system must be properly defined and explained and must ensure, in accordance with IRCA, that alien workers brought into the U.S. not "adversely affect the wages and working conditions of workers in the United States...." 8 U.S.C. Sec. 1186(a)(1)(B).[9]

Nonetheless, the past policy of DOL has been to provide for both an AEWR and a piece rate that enhances the wages of all piece rate workers. *See NAACP III,* 765 F.2d at 1183. Thus far, the Department has not provided any explanation for why it now has chosen to abandon that comprehensive policy and adopt its new system. Nor has DOL explained how its new system will protect U.S. piece rate workers from the adverse effects of the importation of alien workers. *See Western Union In-*

---

6. In addition, DOL has frozen productivity requirements at 1977 levels and adopted an administrative process for reviewing requests for increases. 20 C.F.R. Sec. 655.102(b)(9)(B) (April 1, 1988). DOL clearly has provided a reasoned explanation for its productivity freeze and accompanying provisions. *See* 52 Fed.Reg. 11465 (April 9, 1987). The process adopted does in fact address the concerns raised by the Court of Appeals in *NAACP III,* 765 F.2d at 1184-85.

7. To the extent that this policy change is based on DOL's contention that wage depression is no longer sufficient to warrant such enhancements, the argument must fail for the reasons set forth in the AEWR Opinion issued today.

8. This court is precluded from supplying an explanation for the Department's action. *See*

*Motor Vehicle Manufacturers Ass'n.,* 463 U.S. at 43, 103 S.Ct. at 2867 ("The reviewing court should not attempt itself to make up for such deficiencies; [the court] may not supply a reasoned basis for the agency's action the agency itself has not given.").

9. In the AEWR Opinion I issued today, I remanded the AEWR adopted by DOL in 1987. I found that DOL had not properly explained either the methodology underlying its AEWR or its contention that wage depression was no longer a significant problem. The piece rate I address in this opinion is dependent upon that AEWR. Therefore, putting aside the determinations of this opinion, it is clear that the piece rate is flawed by its reliance on an AEWR that has been found to be "contrary to law." *See* AEWR Opinion at 15.

*ternational, Inc. v. FCC,* 804 F.2d 1280, 1291 (D.C.Cir.1986) ("the key is whether the agency changed its policy only after reasoned consideration of relevant factors"); *see also Brae Corp.,* 740 F.2d at 1038. Therefore, I am constrained to find that the Department has not provided the necessary reasoned explanation to support the new piece rate it adopted in 1987.

## V. CONCLUSION

For the foregoing reasons, I find that DOL has failed to provide a reasoned explanation for its actions in adopting its 1987 piece-rate regulations and, therefore, DOL's piece rate is contrary to law. 20 C.F.R. Sec. 655.102(b)(9)(ii) (April 1, 1988); 52 Fed.Reg. 20515 (June 1, 1987).

An appropriate order accompanies this opinion.

### ORDER

On this date, the Court issued its opinion in the above titled action. In accordance with the reasons set forth therein, it is

ORDERED that Plaintiffs' Motion to Remand the Piece Rate Regulation shall be and hereby is granted; and it is

FURTHER ORDERED that a hearing be held to determine the scope and nature of relief to be granted. The hearing on this matter shall be held on January 3, 1989 at 2:00 PM, in the U.S. Courthouse in a courtroom to be designated on that date.