814 F.2d 410
 85 A.L.R.Fed. 245, 55 USLW 2513, 7
Fed.R.Serv.3d 1
 Charles R. HENSON, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
EAST LINCOLN TOWNSHIP, an Illinois municipal corporation,
and all others similarly situated; and Walter Miller, in
his official capacity as Supervisor of General Assistance in
East Lincoln Township, and all others similarly situated,
Defendants-Appellees.
 No. 85-3201.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 17, 1986.
Decided March 11, 1987.
Rehearing and Rehearing En Banc Denied June 10, 1987.
 
 Philip C. Milsk, Land of Lincoln Asst. Found. Inc., Carbondale, Ill., for plaintiff-appellant.
 Lawrence M. Cohen, Fox & Grove Chtd., Chicago, Ill., Gary M. Peplow, Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, Ill., Gregory E. Pelini, Karen L. Poppe, Pelini & Sheffler, Champaign, Ill., Diane L. Vaksdal, Matthew Y. Biscan, Denver, Colo., Robert L. Zeman, Des Plaines, Ill., Edward F. Diedrich, DeKalb, Ill., for defendants-appellees.
 Before POSNER and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 The question for decision is whether classes of defendants are permissible in actions governed by Rule 23(b)(2) of the Federal Rules of Civil Procedure. The district judge said "no," 108 F.R.D. 107 (C.D.Ill.1985), and we must decide whether he was right.
 
 
 2
 Following Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), this court, in White v. Roughton, 530 F.2d 750 (7th Cir.1976) (per curiam), held that the due process clause of the Fourteenth Amendment requires local welfare departments in Illinois to establish written standards for welfare ("general assistance") eligibility, and notice-and-hearing procedures for the grant or denial of applications for welfare. The White case involved the welfare department of the township of Champaign, and the consent decree that was entered in the wake of our decision (and that we revisited in White v. Roughton, 689 F.2d 118 (7th Cir.1982)) provided no state-wide relief. A downstate legal-aid bureau, the Land of Lincoln Legal Assistance Foundation, filed the present suit in 1980. The purpose of the suit is to make other welfare departments in Illinois comply with the principles laid down in our 1976 decision. The suit is on behalf of one named plaintiff, Henson, a resident of East Lincoln Township, and every other person in 65 downstate Illinois counties (the counties served by the Foundation) who has been denied due process of law in connection with an application for welfare. The suit is against East Lincoln Township and its welfare supervisor--they are the named defendants--plus every other local welfare department (and its supervisor) in the 65 counties that does not receive any state aid. The defendant departments are all what are called "non-receiving" departments; welfare departments that receive state aid are bound by state procedural regulations that comply with the principles of White v. Roughton. Henson believes there are 770 "non-receiving" departments in the 65 counties, and they and their supervisors are the members of the defendant class. The suit seeks only injunctive relief, and the Foundation asked for certification of the defendant class only under subsection (b)(2) of Rule 23.
 
 
 3
 The Foundation notified each of the 770 departments of the suit, and the district judge allowed it to serve each of them with a deposition on written questions (Fed.R.Civ.P. 30). Most of the 525 departments that answered at least some of the Foundation's questions acknowledged that they were not complying with one or more of the principles announced in White v. Roughton--at least that is the construction that the Foundation places on their answers and for purposes of this appeal we shall assume it is correct.
 
 
 4
 The district judge denied the plaintiff's motion under Fed.R.Civ.P. 23(c)(1) to certify the defendant class, on the ground that Rule 23(b)(2) does not permit defendant classes. He certified his ruling for an immediate appeal under 28 U.S.C. Sec. 1292(b), see 107 F.R.D. at 113, and we agreed to hear it. He has stayed all proceedings in the case until we decide the appeal.
 
 
 5
 Rule 23 provides, so far as is pertinent to this appeal:
 
 
 6
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 7
 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 
 
 8
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 
 
 9
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 
 
 10
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 
 
 11
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 
 
 12
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....
 
 
 13
 It is apparent from the words of Rule 23(a) ("sue or be sued as representative parties") that suits against a defendant class are permitted. But it does not follow that they are permitted under all three subsections of Rule 23(b). They plainly are permitted under (b)(1), which speaks of "separate actions by or against individual members of the class." Nor is there anything to preclude them under (b)(3). Henson (realistically, the Foundation) cannot fit his case under (b)(1), however, because that subsection contemplates a joint right or obligation. An example would be a suit against members of an unincorporated association naming the officers of the association as the representatives of the defendant class. See Advisory Committee's Notes to 1966 Amendment of Rule 23. And Henson is not interested in bringing the action under (b)(3). Any member of a defendant (as of a plaintiff) class in a (b)(3) suit can "opt out" and thus not be bound by the judgment. See Rule 23(c)(3). Henson fears that every member of the defendant class would do just that. It is (b)(2) or nothing.
 
 
 14
 The question whether there can be a defendant class in a Rule 23(b)(2) suit cannot be answered by reference to authority. Although the question was declared "settled" in favor of permitting a defendant class in Marcera v. Chinlund, 595 F.2d 1231, 1238 (2d Cir.), vacated on other grounds under the name of Lombard v. Marcera, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), in neither of the cases that the court in Marcera cited for this proposition--Washington v. Lee, 263 F.Supp. 327 (M.D.Ala.1966) (3-judge court), aff'd without opinion, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968), and Lynch v. Household Finance Corp., 360 F.Supp. 720, 722 n. 3 (D.Conn.1973) (3-judge court)--had the issue been discussed. Lee had been filed before the 1966 amendments to Rule 23 that added (b)(2) (though it was decided after); the opinion does not even mention (b)(2). According to a count by the defendants in this case that Henson does not suggest is inaccurate, district courts have certified a defendant class in 45 cases under (b)(2) since 1966. (Many of these are discussed in 1 Newberg on Class Actions Sec. 4.64 (2d ed. 1985).) But the only courts of appeals to discuss the permissibility of such actions (there is decision but no discussion in Marcera ) have held that they are not permissible. See Thompson v. Board of Education, 709 F.2d 1200, 1203-04 (6th Cir.1983); Paxman v. Campbell, 612 F.2d 848, 854 (4th Cir.1980) (per curiam). We expressed skepticism about the permissibility of such actions in Adashunas v. Negley, 626 F.2d 600, 604-05 (7th Cir.1980), but did not have occasion to resolve the issue then. Similar skepticism is evident in Greenhouse v. Greco, 617 F.2d 408, 413 n. 6 (5th Cir.1980).
 
 
 15
 Admittedly both Thompson and Paxman were read narrowly in Bazemore v. Friday, 751 F.2d 662, 669-70 (4th Cir.1984), aff'd in part, vacated in part, on other grounds, --- U.S. ----, 106 S.Ct. 3000, 88 L.Ed.2d 333 (1986). And then there are those 45 district court cases in which a defendant class was certified under (b)(2)--but their aggregate precedential significance is small. In most there is no discussion of the lawfulness of the certification; the court just does it. In some the issue is discussed but the discussion is perfunctory; the best explanation for these cases is that "the courts are simply unwilling to deprive the plaintiff of this useful measure." Doss v. Long, 93 F.R.D. 112, 119 (N.D.Ga.1981). Some of the 45 cases may be distinguishable from this one. For example, in DeAllaume v. Perales, 110 F.R.D. 299, 304 (S.D.N.Y.1986), and perhaps in Marcera itself (see 595 F.2d at 1238), the members of the defendant class were acting in concert. The plaintiffs in DeAllaume alleged that local officials were carrying out the policy directive of a state official. The members of the plaintiff class may therefore have had a dispute with all the members of the defendant class, viewed as agents of the state official and thus as the spokes of a conspiracy of which he was the hub. And in Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 285 F.Supp. 714, 723 (N.D.Ill.1968), the defendant class wanted declaratory and injunctive relief against the plaintiffs, making the defendant class in effect a plaintiff class. Finally, not all district judges think that a defendant class can be certified in a suit governed by Rule 23(b)(2); besides the district court opinion in the present case see, e.g., Coleman v. McLaren, 98 F.R.D. 638, 651-52 (N.D.Ill.1983).
 
 
 16
 Henson appeals to the language of Rule 23, which begins, "One or more members of a class may sue or be sued as representative parties on behalf of all...." But the next word is "only," and is followed by a list of prerequisites to maintaining a suit as a class action. The first sentence does not authorize defendant classes but merely states limitations common to all class action. Nowhere does it imply that defendant class actions are possible under every subsection of Rule 23(b).
 
 
 17
 Henson points out that (b)(2) speaks of "the party opposing the class" and that the draftsmen could easily have said "the defendant" instead if they had meant to limit (b)(2) to plaintiff classes. But (b)(2) speaks of declaratory as well as injunctive relief, and in a declaratory judgment action the parties frequently get reversed. A debtor for example might bring a suit against a class of creditors, seeking a declaration of nonliability. In such a case it could be argued that the "real" plaintiffs were the creditors and the "real" defendant the debtor--that it was the debtor who had "acted or refused to act on grounds generally applicable to the class." In such a case a (b)(2) "defendant" class might conceivably be permissible, though that is not an issue we need resolve today. Blake v. Arnett, 663 F.2d 906, 911-13 (9th Cir.1981), may have been such a case.
 
 
 18
 Actually the language of (b)(2) is against Henson. Always it is the alleged wrongdoer, the defendant-never the plaintiff (except perhaps in the reverse declaratory suit)--who will have "acted or refused to act on grounds generally applicable to the class." In this case, for example, the plaintiff class is complaining about the conduct of the named defendants and of the unnamed defendant class members in not promulgating written standards for welfare eligibility and in otherwise not complying with the requirements of due process of law spelled out in White v. Roughton. No one is complaining about any act or refusal to act by Henson or by any member of the plaintiff class.
 
 
 19
 The drafting history is also against Henson. The Advisory Committee's Notes make no reference to defendant class actions in connection with (b)(2). They describe the (b)(2) class action as an action by a plaintiff class against a defendant who has done something injurious to the class as a whole. "Illustrative are various actions in the civil-rights field where a party is charged with discriminating against a class, usually one whose members are incapable of specific enumeration." Henson's counsel acknowledged at oral argument that the draftsmen of (b)(2) did not contemplate defendant classes but he argued that nevertheless the language they used brought such actions (perhaps inadvertently) under the rule. It does not, as we have shown; so we need not decide whether draftsmen of rules or statutes should ever be held to meanings that are inadvertent--the product of the ambiguities inherent in language.
 
 
 20
 Henson's main argument is that to interpret Rule 23(b)(2) as excluding defendant class actions would create a remedial gap so large that the draftsmen's failure to provide for such actions must be ascribed to oversight. The premise of this argument is not persuasive. The ease and speed with which the Federal Rules of Civil Procedure can be amended by those whom Congress entrusted with the responsibility for doing so should make federal judges hesitate to create new forms of judicial proceeding in the teeth of the existing rules. Neither the rules committee nor any of its advisors has ever considered whether actions such as the present should be maintainable and if so under what conditions and with what limitations; and the fact that in 45 out of almost two million civil lawsuits filed in federal district courts since 1966 a defendant class has been certified under (b)(2) does not prove that the (b)(2) defendant class action fills an essential need. Such an action creates as we shall see severe problems of manageability and due process, and if the need for such actions is nonetheless an urgent one, the problems they create should be addressed by the persons charged with primary responsibility for formulating the rules of procedure for the federal courts.
 
 
 21
 The Foundation points out that if this suit cannot be maintained against a class of defendants, the plaintiff class will shrink to welfare applicants in East Lincoln Township--for they alone have a quarrel with the named defendants. To get all the relief this suit seeks the Foundation will have to find a plaintiff in each of the other 770 townships (or in however many actually are violating the Fourteenth Amendment)--and one suit will become several hundred and clog the overcrowded dockets of the federal district courts in central and southern Illinois. The Foundation paints with too vivid a palette. Any township that is violating the principles of White v. Roughton has strong incentives to bring itself voluntarily into prompt and full compliance (and all or most of them may, for all we know, have done so during the five-year course of this litigation). By virtue of 42 U.S.C. Sec. 1988, the plaintiff in a federal civil rights suit is normally entitled to the award of a reasonable attorney's fees if he prevails, so townships that prove obdurate in defending the indefensible will pay not only their own legal expenses but those of their adversaries. Furthermore, it may be that in many of these townships either there are no denials of due process or the denials aren't hurting anyone who cares to step forward and be a class representative, in which event the number of separate suits that would replace this two-sided class action might be many fewer than the Foundation predicts. (Indeed, it acknowledged at argument that the difficulty of lining up plaintiffs in the other townships was one of its motivations for seeking to certify a defendant class.) Even if several hundred cases are filed, they can be consolidated for pretrial discovery and for trial in one court, before one judge, and all but the lead case stayed until that case is resolved, and then the others resolved summarily. See 28 U.S.C. Sec. 1407. The practical difference between class treatment and individual-case treatment, so far as securing the constitutional rights of welfare recipients in Illinois is concerned, could turn out to be small.
 
 
 22
 It is relevant to our consideration to note that a double class action would be unwieldy, or worse, in the circumstances disclosed by this case, and probably generally. The law firm retained by one Illinois township of modest size is being asked to shoulder responsibility for defending the interests of hundreds of others, which by the same token are being asked to place the responsibility for a litigation vital to the discharge of their essential and financially burdensome public functions in lawyers they may never have heard of. Indeed, "told" rather than "asked"; for not only is there no provision in (b)(2) for a class member to opt out of the suit, but there is no requirement of notifying the members of the class, though such notice was provided here. It would be odd if the rule permitted a defendant class without requiring notice; this is one more bit of evidence against Henson's reading of the statute.
 
 
 23
 And because the defendant class consists of local governments and their officials, in effect the federal district court is being asked to override the state's allocation of powers among local governmental bodies and treat the welfare system as if it were a state system rather than a local system--though it really is local, except for those townships that receive state aid, and they are not involved in this case. It is only an accident, moreover, that this litigation is limited to 65 counties in Illinois. On the Foundation's reading of (b)(2), as it acknowledged at argument, this suit could have been brought as a nationwide class action pitting all welfare applicants in the United States who are being denied due process of law against all the welfare departments in the United States that are thought to be denying those benefits. The welfare department of Eugene, Oregon might find itself an unnamed defendant in the Central District of Illinois, represented by the law firm retained by the township of East Lincoln, Illinois. True, it might be able to interpose objections based on lack of personal jurisdiction. See 3B Moore's Federal Practice p 23.40, at p. 23-313 n. 8 (2d ed. 1985). But this would not solve the deeper problems of such a suit. By the very definition of a double class action there is no controversy between most plaintiffs and most defendants. Residents of East Lincoln have no quarrel with any defendant except East Lincoln; East Lincoln has no quarrel with any plaintiff except Henson. And so it goes for all the members of the plaintiff and defendant classes. The double class action is a legislative or regulatory device for bringing about general compliance with law (the injunction issued at the end of the action corresponding to a statute or regulation that binds all persons within its scope, whether or not they have been guilty of any wrongdoing in the past), rather than an adjudicative device for resolving a dispute. Indeed, as we have said, the Foundation's fear of not being able to enlist a plaintiff against each and every one of the allegedly noncomplying townships was one of the motivations behind seeking the certification of a defendant class. It is possible that in a double class action with thousands of parties only two would have a dispute--Hensen and East Lincoln Township. Without having to decide whether Article III permits a federal court to assert jurisdiction over a mass of parties that may not be engaged in an actual controversy with anyone, we believe that a federal court should not claim such jurisdiction on the basis of a rule of procedure not intended by its draftsmen to confer it.
 
 
 24
 An influential current in contemporary legal thought believes that the old-fashioned bipolar model of adjudication is hopelessly outmoded and that the federal courts should embrace with enthusiasm a newer model of adjudication, in which federal district courts carry out ambitious restructurings of public institutions, such as state and local welfare systems, in the manner of a regulatory agency. See, e.g., Chayes, The Role of the Judge in Public Law Litigation, 89 Harv.L.Rev. 1281 (1976). Whatever the abstract merits of this approach (and maybe it should not be evaluated in the abstract), we do not find it embodied in Rule 23(b)(2), and we have no authority to amend the rule.
 
 
 25
 One might argue that concerns about a nationwide (b)(2) defendant class action or about the use of the (b)(2) defendant class action to get around an absence of willing plaintiffs should be addressed on a case-by-case basis rather than used to create an absolute rule against such an action. We disagree. Our job is to interpret the existing rule, and the fact that the rule does not set forth the explicit limitations that would be necessary and appropriate to prevent such a class action from becoming a monstrous perversion of the principles of civil procedure is evidence that the rule does not authorize such actions. Nothing in the structure or history of the rule suggests that it was intended as a broad delegation to the courts of a power that judges would domesticate by bringing to bear limiting principles found elsewhere in Rule 23, or in the Constitution, or in the Judicial Code.
 
 
 26
 Granted, such limiting principles abound. We have mentioned one already--the limitations on a court's personal jurisdiction. There are others, so that even if (b)(2) double class actions were possible in principle, the present class action or our hypothetical nationwide class action might be precluded--whether by Rule 11, which requires that counsel inquire before rather than after bringing suit whether his client has a claim against the defendant (including we suppose members of a defendant class), or by Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class," see La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 466 (9th Cir.1973). At the very least, such actions might be trimmed down to manageability by orders issued under Rule 23(d), such as an order permitting the district court to allow each member of the defendant class to intervene in the suit with the full rights of a named party. But the managerial burdens placed on the district court would be great, and the potential for litigation over rulings under these provisions considerable. We are loath to embark on these uncharted and, as it seems to us, perilous seas without some indication that the framers of Rule 23 would have wanted us to do so; there is no such indication. Previous judicial experience with such class actions is too limited to persuade us that our fears are chimerical or our interpretation of the rule unsound. If as we doubt there is a great need for defendant classes in Rule 23(b)(2) suits, we do not doubt that the Advisory Committee on the Federal Rules of Civil Procedure will repair the gap left by our interpretation by the present rule. It is more likely that the Committee can come up with a rule that will solve (if they are soluble) the notice and management problems that suits such as this pose than that ad hoc decisions by federal district judges around the country will produce a satisfactory standard.
 
 
 27
 Our conclusion is supported not only by the cases cited earlier but by the Wright and Miller treatise, see 7A Wright, Miller & Kane, Federal Practice and Procedure Sec. 1775, at pp. 461-62 (2d ed. 1986), and by the thorough discussion in Comment, Defendant Class Actions and Federal Civil Rights Litigation, 33 UCLA L.Rev. 283, 316-25 (1985). Professor Moore, though sympathetic to allowing (b)(2) suits against classes, admits that it would require stretching the language of the rule and would create a variety of problems; why he nevertheless favors the device is unclear. See 3B Moore's Federal Practice, supra, p 23.40. The case for the (b)(2) defendant class is well argued in Note, Certification of Defendant Classes Under Rule 23(b)(2), 84 Colum.L.Rev. 1371 (1984), stressing the utility of the device in a case such as the present where local officials are alleged to be unwilling to comply with decisional law; but for reasons explained earlier we are less impressed than the note's author is by the practical arguments for the device. We note, finally, that double class actions remain possible under (b)(3), as in Appleton Electric Co. v. Advance-United Expressways, 494 F.2d 126, 137 and n. 22 (7th Cir.1974).
 
 
 28
 The district court's order declining to certify a defendant class is
 
 
 29
 AFFIRMED.
 
 
 30
 WILLIAM J. CAMPBELL, Senior District Judge, concurring in part and dissenting in part:
 
 
 31
 I concur in the result reached in this case by the majority, however I have no desire to join in the majority's issuance of an absolute prohibition against Rule 23(b)(2) defendant class actions. There are respected authorities on both sides of this difficult issue and both schools of thought, in my opinion, do a sufficient job of advocating their beliefs. I believe 23(b)(2) defendant class actions should be reserved for rare sets of circumstances. Yet they are viable for stubborn or neglectful groups of defendants who refuse to make honest attempts to comply with settled substantive law. Let me say at the outset that the Supreme Court had its chance to condemn and prohibit 23(b)(2) defendant class actions on the appeal of Marcera v. Chinlund, 595 F.2d 1231 (2d Cir.1979).[1] It didn't. While I realize a lack of comment by the Court on an issue does not necessarily mean approval, it seems to me inescapable that the practical effect of the Court's inaction here was to allow such a class action under such circumstances; that is, when attempting to effectuate general compliance with statutory law or uniform, well-recognized administrative policies. I believe under circumstances constituting an "enforcement" setting, certifying defendant classes under 23(b)(2) can, on occasion, pose remarkably few constitutional problems (which could probably be avoided subsequently in the litigation through the wise use of Rule 23(c)(4) and (d)). In their best light, 23(b)(2) defendant class actions can eliminate the perpetuation of substantial injustices.
 
 
 32
 Allow me to elaborate upon the Marcera case, which serves as an example of how 23(b)(2) defendant class actions can be a liberating force for the federal bench, ridding it of mischievous defendants and festering problems--and actually doing justice for obviously deprived plaintiffs along the way. In Marcera, Chief Judge Irving Kaufman of the Second Circuit astutely--and neatly--put the sheriffs' departments of New York's 62 counties in their place. The issue was what kind of "contact visits" should be allowed pretrial detainees in New York state jails. Five years earlier, in 1974, in Rhem v. Malcolm, 371 F.Supp. 594 (S.D.N.Y.), aff'd 507 F.2d 333 (2d Cir.1974), the Second Circuit held that due process mandated that pretrial detainees have the right "to shake hands with a friend, to kiss a wife, or to fondle a child." 371 F.Supp. at 626. The rationale was that pretrial detainees should be considered innocent until proven guilty and that a kiss, handshake or fondle was not too much to ask.
 
 
 33
 Two years later, in 1976, the issue was still being litigated one penal institution (or county) at a time, each case culminating with the issuance of a decree mandating to that particular county or sheriff what was already known--contact visits must be made available. Also in 1976, the New York State Corrections Commission took the pains to promulgate regulations requiring each corrections facility to implement a contact visitation program. The sheriffs still refused to cooperate, claiming the Commission had infringed on their turf as administrators of the jails.
 
 
 34
 In November of 1976, two state prison inmates, Joseph Marcera and John Dillon, brought an action in federal district court to enforce their right to contact visitations. Yet this time, on behalf of themselves and a plaintiff class of all pretrial detainees in the state prison system, they sought injunctive relief from a defendant class of 47 sheriffs who all still denied such contact visits in their jails. Sheriff Lombard of Monroe County, where Marcera and Dillon were being held, was designated as representative of the defendant class. At first the district court denied plaintiffs' requested injunctive relief, stating it believed plaintiffs' failed to prove a likelihood of success on the merits or irreparable harm. It also declined to certify either a plaintiff or defendant class.
 
 
 35
 The Second Circuit reversed and instructed that on remand district court should certify the proposed defendant class under 23(b)(2). Chief Judge Kaufman explained the group of 47 sheriffs was large enough to meet the numerosity requirement of Rule 23(a)(1). Questions of law common to the class were also presented to satisfy 23(b)(2). Chief Judge Kaufman emphasized Sheriff Lombard's defenses were typical of those of the class. Typical defenses were that contact visits would threaten security and increase contraband smuggling within the system. Lombard could not cite a case where the defenses were different. While Lombard contended the court's expectation of similar defenses was unrealistic since variations in architecture, staffing and inmate population at different detention facilities would lead to different defenses, Chief Judge Kaufman found this reasoning unacceptable. He rebutted that these considerations would be relevant in fashioning various decrees, yet it was settled law that the prospect of minor variations of decrees covering these areas did not justify a blanket refusal of contact visitations. He reasoned individualized relief should not necessarily preclude a court from certifying a defendant class. A subsequent restructuring of the litigation could always be done under 23(c)(4) and (d). As for whether Lombard could adequately represent and protect the interests of the absentee sheriffs, Chief Judge Kaufman noted sheriff Lombard had all-too-effectively vigorously defended his position which was why, two years after Marcera had instituted the suit and five years after Rhem, Lombard was still employing whatever visitation procedure he chose, regardless of federal district court and state correctional commission enunciations on the matter.
 
 
 36
 Marcera is not a case without its administrative complexities and constitutional soft spots. Chief among them, as Judge Van Graafeiland stated in his thoughtful dissent, is what are the parameters of the term "contact visit" and how can such a visit be effectuated at different jails under different architectural and managerial circumstances? The cost could be high and federal courts could be caught in the "minutiae of jail administration." 595 F.2d at 1246. Yet as Judge Kaufman implicitly recognized, before Marcera, by having to handle pretrial detainee suits on a case by case basis, the federal courts were already caught in the "minutiae of jail administration." Is a protracted battle more desirable? Certainly the interests of justice point toward the 23(b)(2) defendant class certification in this situation.[2] Hence when a court finds itself in a dilemma as to how to enforce compliance with settled substantive law or promulgated regulations against a group of similarly situated defendants (who may even be acting in concert to flout the law), I believe 23(b)(2) defendant class actions are useful and can present no overriding constitutional problems.
 
 
 37
 Such a conclusion is not inconsistent with the latest enunciations from the Fourth Circuit on this issue. In Bazemore v. Friday, 751 F.2d 662 (4th Cir.1984) the Fourth Circuit stated:
 
 
 38
 In this connection, two cases are persuasive, although decided under FRCP 23(b)(2). In Paxman v. Campbell, 612 F.2d 848 (en banc) (4th Cir.1980), we held that a class of defendants of 130 Virginia school boards was inappropriate when each was free to adopt maternity leave policies of entirely unknown differences or similarities, it being uncontradicted there was no statewide policy in force, centrally directed or otherwise. The Sixth Circuit followed Paxman in Thompson v. Board of Education, etc., 709 F.2d 1200 (6th Cir.1983), upon the same fact situation obtaining in Paxman. While those two cases were decided under a different part of the class action rule, the principle remains the same, that to have a proper class of defendants in a case such as this there must be either a statewide rule or practice so that relief is available if the rule or practice is invalid, or the adjudication with respect to a member of a defendant class must as a practical matter be dispositive of the interests of the other members of the class as provided in FRCP 23(b)(1)(B).
 
 
 39
 Id. at 669-70. (Emphasis added).
 
 
 40
 Similarly, in Thompson, supra, when the Sixth Circuit held the district court erred in certifying a defendant class under 23(b)(2), it still noted that:
 
 
 41
 The present case involves approximately 500 separate school districts, each of which was free to adopt its own maternity leave policies. No state statute or uniform administrative policies are involved in the case. The district court acknowledged that "[t]his is not a case where all the defendants are acting under one directive from some superior authority or where there is an obvious binding link among all defendants on this particular policy issue."
 
 
 42
 709 F.2d at 1204. (Emphasis added).
 
 
 43
 When to certify a defendant class under 23(b)(2) is admittedly a very difficult question to answer. Maybe when in doubt, a court shouldn't. However, I do not believe this problem, as perplexing as it can be, should lead to an absolute prohibition of 23(b)(2) class actions. A systematic analysis employing rigid criteria would obviously not be desirable. Inherent in the process is a flexible approach focusing on various factors including the degree of complexity (constitutionally, administratively and financially) that would be created by a 23(b)(2) defendant class certification. In Certification of Defendant Classes Under Rule 23(b)(2), 84 Colum.L.Rev. 1371 (1984), a helpful article mentioned by the majority, several guideposts are listed. First, the less heterogeneity in a defendant class, the better. Also, it is preferable that the defendants be "judicially linked"--the members of the proposed class should share some type of a relationship which predates the litigation. In Marcera, the defendants were responsible for complying with or enforcing a particular law long before the litigation and, quite arguably, they were acting in concert to avoid the implementation of the law. This enabled the Marcera court to more comfortably conclude that their defenses would be similar. Sheer numbers of defendants should also be considered. The majority raises a good point when it asks what would stop the instant suit from becoming a nationwide class action on behalf of all welfare applicants in the United States (although there is the personal jurisdiction issue). Further, why should one medium sized law firm in Illinois have to defend the interests of hundreds of others? And should the hundreds of others have to depend on that Illinois law firm? These are good points, yet as a longtime district judge I'm more willing to trust the district courts and give them the responsibility and discretion to create and certify defendant classes that will not become constitutional or administrative monsters. A district judge can also use Rule 23(d) to alleviate headaches as the litigation progresses.
 
 
 44
 In the instant case, I concur in the result because I view the suit as too unmanageable and the remedies too unfocused. It is true that, in some respects, the difference between Marcera and the case at bar is one of degree. But matters of degree are often at the heart of rulings addressing whether to certify a class. In the action at bar there are 770 defendants. All 770 defendants presumably would have to formulate notice and hearing procedures subject to court approval. Various defendants undoubtedly represent populations of various sizes in locales with varied resources. In Marcera the court was concerned with physical visits in rooms. In the case at bar, the concern is the creation of a great number of administrative or quasi-judicial approval boards--arguably 770 bureaucratic systems. Again, with 23(b)(2) defendant class actions, it's best that when in doubt, don't. In the instant case there is no inference of a willful defiance of well-recognized law or statewide administrative policy as witnessed in Marcera. I agree with the majority that defendant class certification here is too problematical.
 
 
 45
 A constant undercurrent throughout the majority's argument is that allowing 23(b)(2) defendant class actions would result in large numbers of uncontrollable lawsuits with managerial burdens galore. The majority hesitates "to embark on these uncharted and ... perilous seas." Yet these uncharted seas have been visible since 1966 and there have been few casualties since. Indeed, there is a bit of a contradiction in the majority's thought process here. On the one hand, it is worried 23(b)(2) defendant class actions would create unwieldy scenarios and great constitutional wrongs, yet on the other hand it admits there have been few 23(b)(2) defendant class actions (45 or so) since 1966 and it uses this low number to conclude their precedential value is insignificant. Hence the majority uses the small number of past 23(b)(2) defendant class actions to doubt their legitimacy, while at the same time saying that if they were condoned the floodgates to constitutional deprivation and administrative chaos would be opened. The reality appears to be that district courts have used the 23(b)(2) defendant class action tool scarcely and responsibly since the 23(b)(2) defendant class action outlet has been available to them. Looking at the problem from this angle, I must conclude that allowing such defendant class actions would not necessarily subject the federal bench to constitutional chaos or judicial disorder.
 
 
 46
 I see no need to indulge in a detailed word by word analysis of Rule 23(b)(2). As stated earlier, there are respected schools of thought on both sides of this issue and both sides have repeatedly done a remarkable job of proving why the Advisory Committee meant whatever each side wants it to say. There is also the double-edged argument as to why the Advisory Committee hasn't more definitely stated what it means. The majority would have it that if the Advisory Committee really approved of 23(b)(2) defendant class actions it would have amended the rule by now. I say if the Advisory Committee saw such class actions as a threat, it (or the Supreme Court) could have just as easily ended the debate by now, some 20 years after the creation of Rule 23(b)(2). The arguments in this area on both sides are, at this point, stale and inconclusive.
 
 
 47
 In summation, I see little reason to dig a hole and bury a potentially helpful tool for litigants as well as the federal bench until directed to do so by higher authorities. I believe the approach taken by the majority today borders on the simplistic in view of past cases like Marcera. Further, the majority's worries about constitutional (mainly due process) and managerial concerns are less based on history and more on an unsubstantiated view of the future. The majority is short on constitutional horror stories from cases where courts certified 23(b)(2) defendant class actions. The majority refuses to reflect upon future possibilities, in view of cases like Marcera, to envision cases where 23(b)(2) defendant class actions are constitutionally and managerially plausible and just. Because I prefer to look at this question in a different light, I am forced to separate myself from the broad scope of the opinion. Therefore, I respectfully dissent from the part of this opinion that expands itself from the denying of the 23(b)(2) defendant class certification as it relates to this case.
 
 
 
 *
 Hon. William J. Campbell of the Northern District of Illinois, sitting by designation
 
 
 [1]
 Appealed as Lombard v. Marcera, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979)
 
 
 [2]
 Interestingly, while Judge Van Graafeiland expressed concern about the costs and unruliness of the result reached by the court, he did not condemn or denounce the viability of 23(b)(2) defendant class actions in general